## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| POWERMATE HOLDING CORP., | ) | Case No. 08-10498(KG) |
| a Delaware corporation, et al., | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| GREG HENDERSON | ) | |
| on his own behalf and on behalf of all | ) | |
| other persons similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Adv. Pro. No. 08-50559(KG) |
| | ) | |
| POWERMATE HOLDING CORP., | ) | |
| POWERMATE CORPORATION, | ) | |
| POWERMATE INTERNATIONAL, INC., | ) | |
| SUN CAPITAL PARTNERS, LLC, | ) | |
| SUN POWERMATE, LLC, SCSF | ) | |
| POWERMATE, LLC, YORK STREET | ) | |
| MEZZANNINE PARTNERS, L.P., and | ) | |
| JOHN DOES 1-20, | ) | |
| | ) | |
| Defendants. | ) | **Re: Dkt. No. 7** |

## MEMORANDUM OPINION

The matter before the Court is one of first impression in this Circuit, raising the claim status of discharged employees under the 2005 Amendments to the Bankruptcy Code. Plaintiff alleges that he is entitled to administrative expense status pursuant to 11 U.S.C. §503(b)(1)(A)(ii) (the "Amendment"). Procedurally, pending is the defendants' motion to dismiss plaintiff's request for an administrative priority claim. The Court heard oral argument on this motion on August 21, 2008. For the reasons set forth below, the Court will

grant the motion for partial dismissal; to the extent that any damages are recovered, they will be general unsecured claims rather than administrative expenses.

## I. JURISDICTION

The Court's jurisdiction rests upon 28 U.S.C. §§ 157(b)(1) and 1334(b) and (d). The adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## II. STATEMENT OF FACTS[1]

### A. Background

Powermate Holding Corp. ("Powermate Holding"), Powermate Corporation ("Powermate"), and Powermate International, Inc. ("Powermate International" and, collectively, "Debtor Defendants") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on March 17, 2008. Prior to filing, the Debtor Defendants operated in three states. Their corporate headquarters and main operations center was in Aurora, Illinois, with additional facilities in Kearny, Nebraska and Springfield, Minnesota. On March 10, 2008, the Debtor Defendants sold all of their assets located in Springfield, Minnesota, and terminated the employment of all workers at that location.

### B. Pre-petition Termination of Plaintiffs' Employment

On March 17, 2008 ("the Discharge Date"), prior to their bankruptcy filings, Debtor Defendants discharged all of their remaining employees without prior notice. Approximately 260 employees lost their jobs.

---

[1] The parties do not dispute the relevant facts.

## C. <u>Adversary Proceeding and Motion to Dismiss</u>

Greg Henderson ("the Plaintiff") is a former employee of the Debtor Defendants. He worked at the Kearney, Nebraska facility until the Discharge Date. On April 3, 2008, he sued the Debtor Defendants on behalf of himself and other discharged employees alleging that they violated his rights under the *Worker Adjustment and Retraining Notification Act*[2] ("WARN Act") in what he referred to as "part of a mass layoff and/or plant closing"[3] at the Kearny, Nebraska and Aurora, Illinois locations. Plaintiff further alleged that he and the other similarly situated former employees are entitled to recover their wages and ERISA and other benefits for sixty days pursuant to the WARN Act, and that these damages are entitled to administrative priority status pursuant to the Amendment.[4]

On June 4, 2008, Debtor Defendants answered the complaint and moved to dismiss. In the Motion to Dismiss, the Debtor Defendants seek this Court's determination that if the Court finds that there are WARN Act violations, any damages be assigned fourth (or fifth) priority status under §§ 507(a)(4), (5) and not administrative expense priority status.[5]

---

[2] 29 U.S.C. § 2101 *et seq.*

[3] Class Action Adversary Proceeding Complaint for Violations of the WARN Act ¶ 9 (D.I. 1).

[4] *Id.* at ¶ 3.

[5] Opening Brief in Support of Defendants' Motion to Dismiss (D.I. 8).

## III. DISCUSSION

### A. Ripeness

"A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"[6] Conceivably, Debtor Defendants' liability for WARN Act damages is contingent on whether this Court finds that all of the elements for a WARN Act claim are satisfied and that there are no valid excuses for failing to provide notice to Plaintiff.

In determining whether the unresolved issue of liability presents a bar to this Court's ability to decide the priority of any awarded damages, an *Abbott Laboratories* evaluation is necessary. This test "requir[es] us to evaluate both the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration."[7] As for the first prong, "fitness," the Third Circuit has enumerated several factors that contribute to this determination, including "whether the issue is purely legal (as against factual). . . whether the claim involves uncertain and contingent events that may not occur as anticipated or at all, the extent to which further factual development would aid decision, and whether the parties to the action are sufficiently adverse."[8]

---

[6] Texas v. U.S., 523 U.S. 296, 300 (1998)(quoting Thomas v. Union Carbide Agric. Prod. Co., 473 U.S. 568, 580-81 (1985)).

[7] Abbott Labs v. Gardner, 387 U.S. 136, 149 (1967)(setting out often-applied test for determining ripeness).

[8] NE Hub Partners, L.P. v. CNG Transmission, 239 F.3d 333, 342 (3d Cir. 2001)(citing Philadelphia Fed'n of Teachers, American Fed'n of Teachers, Local 2, AFL-CIO v. Ridge, 150 F.3d

In this case, the issue is purely legal, requiring interpretation of a newly adopted statute. Further, the parties to this action are adverse; this Court's determination will have significant consequences for both parties as well as other creditors.[9] Also, no further factual information is necessary to make a determination on this issue, as the relevant facts are not in dispute. The only relevant factor under the "fitness" evaluation that weighs against deciding the issue now rather than later is whether the claim involves uncertain and contingent events. Because the Court has not yet ruled whether the Debtor Defendants are liable or, if liable, excused from giving notice and therefore has not awarded or refused to award damages, the priority of any potential damages claim may not be ripe for review. The Court does not, however, see this as an obstacle to deciding the issue at this time. First, on the issue of liability, the Debtor Defendants have admitted to several allegations that implicate some elements of a WARN Act claim.[10] Second, even if the WARN Act claims are mitigated by one of the defenses contained in 29 U.S.C. § 2102(b), other courts have held that failure to give any notice at all, as the Debtor Defendants did here, will render the "faltering business" or "unforeseen circumstances" exceptions unavailable as a complete

---

319 (3d Cir. 1998)).

[9] *See supra* Part III.B.

[10] *See* Answer of Defendants Powermate Holding Corp., Powermate Corp., & Powermate International Inc., ¶¶ 9, 11, 33 (D.I. 9)[hereinafter Answer] (admitting that it terminated 260 employees, including the debtor on March 17, 2008 and other facts relevant to determine Debtor Defendant's status as "employer" within meaning of WARN Act).

-5-

defense.[11]  If so, the exceptions to the notice requirement may not completely eliminate the claims against the Debtor Defendants.  Therefore, the Court is likely to eventually adjudicate the level of priority under which it will administer such claims.

The second prong of the *Abbott Laboratories* test is the "hardship" to the parties.  This "focuses on whether a plaintiff faces a direct and immediate dilemma, such that lack of review will put it to costly choices."[12]  Without a determination of the priority status of the Plaintiff's claims, the Debtor Defendants will be frustrated in their efforts to proceed any further in their bankruptcy, to formulate a plan as well as to negotiate with creditors.  Depending on the outcome of this issue, the claims of the Plaintiff[13] could be of a sufficient magnitude and priority that there may be nothing left for distribution to other, lower priority creditors.  Until the Debtor Defendants know if the WARN Act claims will diminish the estate, the case will stall, further taxing the estate via other incurred administrative expenses and reducing liquidity until after a trial on the WARN Act violations which could take considerable time.  Therefore, the Court must render a decision regarding the priority status

---

[11] *See In re* Organogenesis Inc., 316 B.R. 574, 584-85 (Bankr. D. Mass. 2004)(holding that debtor's failure to give *any* written notice whatsoever under WARN Act prevents it from relying on defenses allowing reduced notice)(citing United Paperworkers Int'l Union v. Alden Corrugated Container Corp., 901 F.Supp. 426, 440 (D. Mass. 1995); Watts v. Marco Holdings, 1998 WL 211770. *1-2, 1998 U.S. Dist. LEXIS 4647, *4 (N.D. Miss. 1998); Childress v. Darby Lumber, Inc., 126 F.Supp. 2d 1310, 1318 (D. Mont. 2001); Barnett, et. al., v. Jamesway Corp. (*In re* Jamesway Corp.), 235 B.R. 329, 343 (Bankr. S.D.N.Y. 1999)).

[12] *NE Hub Partners*, 239 F.3d at 342 (citing *Philadelphia Fed'n of Teachers*, 150 F.3d 319).

[13] The Plaintiff has brought his adversary proceeding as a class action.  While the Court has not certified a class, the Debtor Defendants have to operate in the meantime on the assumption that the Court will certify the class.

of the claims now so that the Debtor Defendants have a better understanding of their position going forward.

## B.  The WARN Act

Congress passed the WARN Act in 1988 following two decades during which many workers were terminated without notice as a result of mergers, acquisitions and closings.[14] Congress interceded to protect workers, their families and communities, and to give them "some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market."[15]

Under the WARN Act, affected employees[16] are entitled to at least sixty days' notice of a potential termination.[17]  When an employer[18] fails to give such a warning, such affected employees are entitled to back pay and benefits for up to sixty days.[19]  The amount to which

---

[14] Teamsters v. APA Transp. Corp. (*In re* APA Transp. Corp.), Nos. 07-1050, 07-1051, 07-1052, 2008 WL 3982469, at *5 (3d Cir. Aug. 29, 2008).

[15] 20 C.F.R. §639.1(a).  For additional discussion on the purpose of the WARN Act, see *In re* First Magnus Financial Corporation, 390 B.R. 667 (Bankr. D. Ariz. 2008); Int'l Bhd. of Teamsters, AFL-CIO v. Kitty Hawk Int'l, Inc. (*In re* Kitty Hawk, Inc.), 255 B.R. 428 (Bankr. N.D. Tex. 2000).

[16] *See* 29 U.S.C. § 2101(a)(5)(defining affected employees as "those who may be reasonably expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer").

[17] See *id.* § 2102(a).

[18] *See id.* § 2101(a)(1)(defining employers that fall within scope of Act).

[19] *See id.* § 2104(a)(1).

the affected employees are entitled is calculated based on the period of the violation.[20]  The

WARN Act does, however, provide exceptions to the notice requirement, including

exceptions when terminations are a result of shut downs that were not reasonably

foreseeable, natural disasters, or situations where notice would preclude attempts by the

employer to obtain capital investments that would have prevented the terminations.[21]

Here, Debtor Defendants dispute that there were WARN Act violations, arguing both

that the alleged facts do not fit within the scope of the statute and that even if they do, they

were excepted from warning the Plaintiff and other employees under 29 U.S.C. §2102(b)(1),

(2)(A).[22]  Whether such violations occurred or were exempted from liability is not at issue

here; only the priority of potential damages if the Court later finds Debtor Defendants

culpable is relevant.

## C.  Possible Priority Status for Wage Claims

"The broad purpose of the Bankruptcy Act is to bring about an equitable distribution

of the bankruptcy's estate among creditors. . . ."[23]  Debtors, however, are often unable to pay

all of their creditors in full.  Therefore, Congress has set out a statutory priority scheme under

which creditors receive their distributions.[24]

---

[20] *See id.*

[21] *See id.* § 2102(b).

[22] Answer, *supra* note 10, at 8.

[23] Kothe v. R.C. Taylor Trust, 280 U.S. 224, 227 (1930).

[24] Matter of A & B Heating and Air Conditioning, 823 F.2d 462, 465 (11th Cir. 1987).

Claims arising under the WARN Act are prioritized under the various provisions governing wage claims. The Third Circuit defined WARN damages or "back pay," "as a label to describe the daily rate of damages payable" and not as "lost wages."[25] Notwithstanding this definition, several courts have held that such damages are remedial and not punitive.[26] Therefore, given this compensatory nature, they "must be in the nature of wages under the Code."[27] As such, they are governed by the same priority classifications as are all other wage claims. The section below discusses these various levels of priority.

### 1. <u>Administrative Expenses- 11 U.S.C. §503(b)(1)(A)(ii)</u>

Section 503 of the Bankruptcy Code governs administrative expense claims. Administrative expenses are those which either preserve the estate in a reorganization or facilitate the winding-down in a liquidation. Administrative expense claims are given second priority under §507(a)(2), allowing them to be paid ahead of most other claims.[28] The

---

[25] United Steelworkers of America, AFL-CIO-CLC v. North Star Steel Co., Inc., 5 F.3d 39 (3d Cir. 1993).

[26] *See In re* Cargo, Inc., 138 B.R. 923, 927 (Bankr. N.D. Iowa 1992); *see also In re* Hanlin Group, Inc., 176 B.R. 329, 333 (Bankr. D.N.J. 1995); Int'l Bhd. of Teamsters, AFL-CIO v. Kitty Hawk Int'l, Inc. (*In re* Kitty Hawk, Inc.), 255 B.R. 428, 438 (Bankr. N.D. Tex. 2000).

[27] *In re Hanlin Group*, 176 B.R. at 333 (*In re* Riker Indus., Inc., 151 B.R. 823 (Bankr. N.D. Ohio 1993); *In re Cargo*, 138 B.R. at 927).

[28] *See* 11 U.S.C. §1129(a)(9)(A)(requiring administrative expense claims to be paid in cash in full in order for plan of reorganization to be confirmed); 11 U.S.C. §726(a)(1)(requiring distribution of liquidating estate to be paid in order specified by §507, thereby allowing administrative expense claims second priority, satisfaction of which must be complete before lower priority claims receive any distribution).

rationale for providing priority treatment is that it benefits all creditors[29] by encouraging

lenders and others to continue or commence doing business with the debtor.[30]  The result is

that those claims that receive administrative priority status are often paid in full while lower

priority claims are only partially paid.

Under the Code, there are nine types of claims that may receive administrative

expense status.  For the purposes of this discussion, the most important is described in the

Amendment which sets out:

> (b). . . there shall be allowed administrative expenses. . . including-
>      (1)(A) the actual, necessary costs and expenses of preserving the estate including. . .
>           (ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the cause under this title. . .

---

[29] *See In re* First Magnus Fin. Corp., 390 B.R. 667, 673 (Bankr.  D. Ariz. 2008)(citing 4 COLLIER ON BANKRUPTCY ¶ 503.06[1] (15th ed., rev. 2007)).

[30] *See In re* White Motor Corp., 831 F.2d 106 (6th Cir. 1987); *In re* Mammoth Mart, Inc., 536 F.2d 950 (1st Cir. 1976).

Congress added this sub-section to the Code in 2005 by BAPCPA.[31]  Only one decision addresses specifically how this relatively new section relates to the WARN Act.[32]  As discussed further below, however, pre-BAPCPA WARN Act claims were occasionally granted administrative expense priority under the prior version of 11 U.S.C. §503(b)(1)(A).[33]

### 2. Lower Wage and Benefits Priority- 11 U.S.C. §507(a)(4), (5)

11 U.S.C. §507(a)(4)-(5) govern wage claims that do not qualify as administrative expense claims.  These sections provide fourth priority status to unsecured claims for wages, salaries and commissions, vacation pay, severance pay, and sick leave pay earned by an individual[34] and fifth priority status to unsecured claims for contributions to an employee benefit plan.[35]  The maximum dollar amount allowable for each individual under either section is $10,950, and the claim must be "earned" within 180 days before the date of filing.[36] When these sub-sections govern the administration of claims, the repercussions are two-fold. First, because the priority is lower, the likelihood that the claims will be paid in full decreases.  Second, unlike administrative expense claims, there is a maximum amount

---

[31] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 329, 119 Stat. 23, 101 (2005).

[32] *See In re First Magnus*, 390 B.R. 667.

[33] *See infra* note 70 and accompanying text

[34] *See* 11 U.S.C. §507(a)(4).

[35] *See id.* §507(a)(5).

[36] *See id.* §507(a)(4)-(5).

allowable per individual for a claim.  Any amount exceeding that limit is a general unsecured claim.[37]

Courts have consistently held that WARN Act damages are within "the nature of wages" for which §507(a)(4) provides.[38]  Therefore, if this Court determines that the Plaintiff's claims are not administrative expense claims, the lower priority sections will control payment up to the statutory cap.  Any amount in excess of the $10,950 per individual will be a general unsecured claim.[39]

### 3. General Unsecured Claims

Any pre-petition unsecured claim that does not receive priority status under 11 U.S.C. §507 is a general unsecured claim which receives payment last under a plan of reorganization or liquidation.  Such claims include claims for damages arising out of the post-petition rejection of pre-petition executory contracts or unexpired leases,[40] deficiency claims of

---

[37] *See infra* Part III.C.3.

[38] *In re* Hanlin Group, Inc., 176 B.R. 329, 333 (Bankr. D.N.J. 1995); *see also* 11 U.S.C. §507(a)(4); *supra* notes 25-27 and accompanying text.

[39] *See In re* First Magnus Fin. Corp., 390 B.R. 667, 672 (Bankr.  D. Ariz. 2008)(citing Int'l Bhd. of Teamsters, AFL-CIO v. Kitty Hawk Int'l, Inc. (*In re* Kitty Hawk, Inc.), 255 B.R. 428, 439 (Bankr. N.D. Tex. 2000); *In re* Riker Indus., Inc., 151 B.R. 823, 825-26 (Bankr. N.D. Ohio 1993); *In re* Cargo, Inc., 138 B.R. 923, 927-28 (Bankr. N.D. Iowa 1992)).

[40] *See* N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984); *see also* 11 U.S.C. §§ 502(g)(1), 365(g).

undersecured creditors,[41] and any amounts in excess of statutory caps under various priority subsections.[42]

## D.  Plain Language

Because the parties seek a determination of whether the WARN Act claims are administrative expense claims, it is necessary to determine the meaning of the Amendment.[43] Whenever a court attempts to decipher a new statutory enactment, it must employ various canons of statutory construction, the first of which is looking to the plain language. "[W]here. . . the statute's language is plain, the sole function of the courts is to enforce it according to its terms."[44]  Only when the plain meaning of a statue is ambiguous can a court use other methods to determine the correct interpretation.[45]

*In re First Magnus Financial Corp.* is the only case addressing the Amendment.[46]  In that case, employees of the debtor were terminated without notice five days prior to filing for relief under the Bankruptcy Code.[47]  That court determined, among other reasons, that the

---

[41] AmeriCredit Financial Services, Inc. v. Moore, 517 F.3d 987, 989 (8th Cir. 2008).

[42] *See supra* note 36 and accompanying text. Subsections of §507 that provide maximum amounts of allowable claims include §507(a)(4)-(7).

[43] For full text of section, *see supra* Part III.C.1.

[44] *In re First Magnus*, 390 B.R. at 675-76 (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989)).

[45] *See* Lawrence v. City of Philadelphia, PA, 527 F.3d 299, 316-17 (3d Cir. 2008)(citing Morgan v. Gay, 466 F.3d 276, 277 (3d Cir. 2006)).

[46] 390 B.R. 667.

[47] *See id.* at 671.

Amendment was inapplicable because the NLRB had not made an award under the WARN Act to the plaintiffs in that case.[48]  Because this issue is a matter of first impression in this jurisdiction, this Court will do its own analysis of the plain meaning of the statute.

### 1.  <u>Relationship between (i) and (ii)</u>

For the purposes of this discussion, the pivotal statutory language is as follows:

"(b). . there shall be allowed, administrative expenses. . . *including*. . .
        (1)(A) the actual, necessary costs and expenses of preserving the
estate, *including*-
                (i) wages, salaries. . . ; *and*
                (ii) wages and benefits awarded. . . ."[49]

The court in *First Magnus* held that because the word "and" appears between subsections  (i) and (ii) in 11 U.S.C. §503(b)(1)(A), the two provisions  must be read together.[50]  Essentially, the court held that the requirements of *both* sections must be satisfied for a claim to qualify as an administrative expense.  A different reading of the conjunction "and" in relation to these two subsections is that (i) and (ii) are categories within a particular subset of allowable administrative expenses, "actual, necessary costs and expenses of

---

[48] *See id.* at 677.  The court reasoned that the WARN Act does not address a bankruptcy court's power to consider the type of proceeding identified in the Amendment and, therefore, an award under Code Section 503 could only originate from a federal court of general jurisdiction.  The court did, however, acknowledge that other jurisdictions have recognized bankruptcy court power to adjudicate WARN Act claims.  This Court does not agree that a determination by the NLRB is a prerequisite for a bankruptcy court to adjudicate the issue of priority.  Rather, this Court holds that a bankruptcy court's award of wages and benefits constitutes a "judicial proceeding" as provided for in the Amendment.

[49] 11 U.S.C. §503 (emphasis added).  For full text of the relevant statute, *see supra* Part III.C.1.

[50] *See id.* at 677.

-14-

preserving the estate."[51]   This interpretation relies on the word "including" which appears

before subsection (i).[52]   This Court believes that this latter interpretation is correct[53] and

therefore will evaluate the Amendment independently in determining whether the WARN

Act claims are administrative expense claims.

## 2. __The Amendment__

An initial reaction to reading the Amendment is that the section is  unclear.  This is

because the section describes two different times: the period to which back pay is

*attributable* and the time of the *occurrence* of the unlawful conduct and/or when the services

were rendered.[54]  This confusion is further complicated by the fact that the priority of a given

claim is dependant on when these two times correspond with the timing of the filing of the

chapter 11 petition.  A closer reading, however, reveals that the only relevant consideration

is the former time, the time to which the back pay is attributable which is when the rights or

claims *vest* or *accrue,* and how that time relates to the petition date.  If a claim vests pre-

---

[51] 11 U.S.C. §503(b)(1)(A).

[52] This formulation, "including" followed by an "and," appears twice in §503(b) alone.  The final word prior to listing the various types of administrative expense claims is "including" ("there shall be allowed administrative expenses. . . *including*. . . ").  Further, the final word, set off by a semi-colon, between (b)(8)(B) and (b)(9) is an "and."  Under the *First Magnus* court's statutory construction, everything in subsection (b) would have to be present in order for a claimant to have an administrative expense.

[53] Courts must interpret statutes in a manner that does not produce an unreasonable or untenable result. *See* American Tobacco Co. v. Patterson, 456 U.S. 63, 71 (1982).  The construction discussed above produces an unreasonable result and therefore must be incorrect in the face of a more tenable alternative interpretation.

[54] *See supra* Part III.C.1.

-15-

petition, then the back pay is attributable to the time occurring prior to the commencement of the case and therefore it is not an administrative expense claim. If, on the other hand, a claim vests post-petition, the back pay is attributable to the time occurring after the commencement of the case and therefore it is an administrative expense claim. When the unlawful conduct occurred and/or services were rendered does not affect this determination.[55] Further, the payment due date is not controlling because the accrual may occur before or after the payment date.

In order to resolve the status of the Plaintiff's claim, the Court must determine when the rights under the WARN Act vest. Case law in this area has held that because the back pay provided to employees is meant as compensation for lack of notice, "the purpose of WARN is to provide a statutory form of severance pay."[56] The priority of severance pay in bankruptcy has deep roots in the Third Circuit, dating back as far as 1947 in *In re Public Ledger*.[57] In that case, the court set out a framework for determining whether a contractual

---

[55] If services are rendered and the unlawful conduct is completed prior to the petition date, but the claim vests or accrues within the meaning of the violated statute post-petition, then the damages are attributable to a post-petition date and as such are administrative expense claims. On the other hand, if a claim vests pre-petition, but as a result of unlawful conduct that occurs post-petition (perhaps within the terms of the statute, claims for certain types of violations vest retroactively), those claims are only attributable to a period of time occurring before the commencement of the case and do not receive administrative expense priority. Under this scenario, any work completed post-petition would still receive this higher priority status under 11 U.S.C. §503(b)(1)(A)(i), but not under the Amendment.

[56] Oil, Chemical & Atomic Workers, AFL-CIO-CLC v. Hanlin Group, Inc. (*In re* Hanlin Group, Inc.), 176 B.R. 329 (Bankr. D.N.J. 1995).

[57] 161 F.2d 762 (3d Cir. 1947).

severance pay claim is entitled to priority in bankruptcy.[58] Later courts further developed the law, distinguishing "two types of severance pay: '(1) pay at termination in lieu of notice; and, (2) pay at termination based on length of employment.'"[59] In terms of priority, a claim for severance pay will only have administrative priority to the extent that it is based on post-petition services.[60] The former type of severance pay, pay at termination in lieu of notice, vests at the time of the termination because it is based solely on lack of notice.[61] Therefore, the entirety of such a claim becomes an administrative expense claim in a post petition

---

[58] *See id.* at 770-73.

[59] *See In re* Roth American, Inc., 975 F.2d 949, 957 (3d Cir. 1992)(quoting *In re* Health Maintenance Found., 680 F.2d 619, 621 (9th Cir. 1982)).

[60] *See In re Roth American*, 975 F.2d at 957; *In re Public Ledger*, 161 F.2d at 773.

[61] *See In re Public Ledger*, 161 F.2d at 772-73 (explaining difference between claim for breach of employment contract and contractual severance pay (specifically severance pay in lieu of notice, although court does not use specific language) in terms of time of accrual, with severance pay accruing "when they lost their jobs"); *In re* Fleming Packaging Corp., Nos. 03-82408, 03-82410, 03-82411, 2004 WL 2106579, at *3 (C.D. Ill. Aug. 31, 2004)(explaining that severance pay in lieu of notice vests upon termination); *In re* Cargo, Inc., 138 B.R. 923, 927 (Bankr. N.D. Iowa 1992)("pay at termination in lieu of notice. . . is earned. . . upon termination").

discharge.[62]  Conversely, a claim for severance pay for a pre-petition termination does not

receive administrative expense status.

Returning now to the connection between WARN and severance pay,[63] courts that

have compared the two consistently hold that WARN damages are specifically like payment

at termination in lieu of notice.[64]  It therefore follows that the rights of workers discharged

in violation of the WARN Act accrue in their entirety upon their termination.[65]  In this case,

the claims of the Plaintiff and other former employees vested when they were terminated pre-

petition.  Because these claims vested pre-petition, they are not administrative expense

_____

[62] *See In re Public Ledger*, 161 F.2d at 771 ("The severance pay, in that it moves to all employees regardless of length of service, is held to be wages wholly earned and accrued under the trustee's management and, therefore, is entitled to priority as such."); *see also In re Hechinger Inv. Co.*, 298 F.3d 219, 227 (3d Cir. 2002)("pay at termination in lieu of notice is allowed administrative expense priority because the payments are made in consideration of quick departure from employment after the petition date. . . ").  Conversely, severance pay that is of the latter type, pay at termination based on length of employment can only receive administrative expense priority to the extent that it is based on services performed post-petition.  The remainder of such severance pay receives lower priority status. *See In re Hechinger*, 298 F.3d at 227; *In re Roth American*, 975 F.2d at 957-58; *In re Public Ledger*, 161 F.2d at 774.

[63] WARN Act damages are a statutory form of severance pay. *See supra* note 56 and accompanying text.

[64] *See In re* First Magnus Fin. Corp., 390 B.R. 667, 673 (Bankr. D. Ariz. 2008); *In re Cargo*, 138 B.R. at 928.

[65] *See In re Cargo*, 138 B.R. at 928; *see also In re* Hanlin Group, Inc., 176 B.R. 329 (Bankr. D.N.J. 1995).  Neither of the parties argue that WARN Act claims vest entirely upon termination. Rather, their disagreement focuses on whether the sixty days of damages are meant to be for the sixty days following termination or for the sixty days prior to termination.  *See* Plaintiff's Response to Debtor's Motion to Dismiss at 18 (D. I. 13)[hereinafter Response]; Reply Brief in Further Support of Defendants' Motion to Dismiss at 10-11 (D.I. 22).  As discussed below, this is irrelevant. *See infra* note 67 and accompanying text.

claims.[66]  Further, because the vesting date is the only crucial time, and WARN Act claims

vest entirely upon termination, whether the back pay was due for the time prior to the vesting

or the time following the vesting is irrelevant.[67]  Therefore, in accordance with the plain

meaning of the statute, any damages awarded to the Plaintiff will be administered under

§507(a)(4)-(5).

---

[66] It may seem that under this analysis, the results will always be identical to that of the pre-BAPCPA amendments.  As discussed further below, this Court does not believe that BAPCPA represents a sea change in the area. *See infra* Part III.E.  However, this does not necessarily mean that BAPCPA had no impact on the priority of WARN Act claims.  Because the Amendment focuses on timing of vesting of rights as opposed to when services were rendered, if a corporation filed for bankruptcy after its employees had left for the day and then discharged them before they returned to work on the following work day, their WARN Act claims would be administrative expense claims under the vesting rights approach to the Amendment.  This is because the claims vested upon termination which occurred post-petition.  While there are no cases on record under the prior version of the Code that had this specific fact scenario, given the fact that the prior language emphasized "services rendered after commencement of the case," it is unlikely that any court would have held that WARN Act claims were administrative expense claims despite the fact that they consistently held that such claims were "earned" upon termination.  The case law under the prior version of the Code also emphasized the requirement of a *benefit* to the estate.  *In re* Subscription Television of Greater Atlanta, 789 F.2d 1530, 1532 (11th Cir. 1986)(quoting Corp. of Georgia v. Broadfood, 54 B.R. 606, 613 (N.D. Ga. 1985)).  This Court believes that the Amendment vitiates that emphasis, allowing for administrative expense claims when the claimant did not necessarily provide a concrete benefit to the estate.  However, despite the easing of the standard, the Code still clearly requires something to occur post-petition, namely the vesting.  For full language of the pre-BAPCPA Code, *see infra* Part III.E.

[67] The entirety of a claim will be "attributable to" the vesting time.  Therefore, WARN Act claims cannot be divided by the petition date, they are either completely administrative expenses (if the claims vest post-petition) or wage priority claims (if the claims vest pre-petition).  The going forward or relating back analyses of the parties discussed *supra* note 65 does not have a place in this determination.  Other wage claims may have a different result under this section.  For example, if a statute or decision provided that violations vest on a daily basis, aggregating based on the number of days of a violation, priority of such wage claims may be divided with back pay for days prior to the petition date receiving lower priority than those after the petition date.

### E.  Pre-BAPCPA Law- Amendment Does Not Represent a Sea Change

Because the language of the statute is unambiguous, this Court is not required to further evaluate the meaning of the statute.[68]  For the sake of completeness, however, this opinion will address another compelling reason to hold that damages awarded under the WARN Act for pre-petition termination are not administrative expenses, namely, legislative intent.

The pre-BAPCPA Code set out 11 U.S.C. §503(b)(1)(A) as follows:

(b) . . . there shall be allowed administrative expenses. . . including. . .
    (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case. . .

Case law under this prior version of the Code established that, like under the new law, timing was everything.  Courts consistently held that WARN Act damages based on pre-petition terminations only received fourth or fifth level priority status.[69]  Further, those claims arising out of post-petition terminations were granted administrative expense priority.[70]  The rationale for these decisions was that administrative expense status could only be extended to wages for *services rendered* post-petition.  This necessarily required the

---

[68] *See supra* note 45 and accompanying text.

[69]  *See* Int'l Bhd. of Teamsters, AFL-CIO v. Kitty Hawk Int'l, Inc. (*In re* Kitty Hawk, Inc.), 255 B.R. 428, 439 (Bankr. N.D. Tex. 2000); *In re* Riker Indus., Inc., 151 B.R. 823, 827 (Bankr. N.D. Ohio 1993); *In re* Cargo, Inc., 138 B.R. 923, 927 (Bankr. N.D. Iowa 1992).

[70] For an example in this circuit, *see e.g., In re* Hanlin Group, Inc., 176 B.R. 329, 333 (Bankr. D.N.J. 1995).

-20-

claimants to both actively contribute to the benefit of the estate post-petition and be terminated post-petition in order to receive the higher priority status.[71]

The Plaintiff advocates an application of the Amendment which would drastically change the outcome of pre-petition employment terminations.[72] The enormous increase in the value of wage claims if the law is interpreted according to the Plaintiff's view is so extreme that it would effectively cripple the debtors' efforts for an equitable reorganization or liquidation. It is the Court's view that if Congress intended for such a monumental shift in the administration of estates under bankruptcy law, there would be significant legislative history.[73] Instead the record is nearly silent. Such evidence of Congressional intent, or lack thereof, supports this Court's interpretation of the Amendment.

## IV.  Conclusion

While the language of the Amendment may require careful reading, it is not ambiguous. The Amendment clearly sets out that wage claims are administrative expenses when they are attributable to a postpetition period of time. This "attributable to" language

---

[71] *See supra* note 66.

[72] *See* Response *supra* note 65 at 20-23 (discussing three provisions that Plaintiff believes demonstrate Congressional intent to effect major alteration to allowable administrative expenses).

[73] The legislative history on this section is extremely sparse, more of a restatement of the language than an explanation. *See* H.R. Rep. 109-31 (I), *84, 2005 U.S.C.C.A.N. 88, *150 ("Section 329 amends Bankruptcy Code section 503(b)(1)(A) to accord administrative expense status to certain back pay awards. This provision applied to a back pay award attributable to any period of time occurring postpetition as a result of a violation of federal or state law by the debtor pursuant to an action brought in a court or before the National Labor Relations Board, providing the bankruptcy court determines that the award will not substantially increase the probability of layoff or termination of current employees or of nonpayment of domestic support obligations").

equates to the time when rights/claims vest.    WARN Act claims vest entirely upon termination.  Therefore, whether a WARN Act claim is an administrative expense depends on whether the termination without notice occurred pre or post-petition.  In this case, the terminations occurred prepetition.  Plaintiff's rights vested at that time.  Therefore, any allowed claims must be administered as fourth and fifth priority claims under 11 U.S.C. §507(a)(4)-(5) with any amount exceeding the statutory cap constituting general unsecured claims.  The Court will issue an Order consistent with this opinion.


Dated: October 10, 2008

KEVIN GROSS, U.S.B.J.